## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT OWENSBORO

**BRADLEY STILLS PEELER**                                                                 **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO. 4:04-CV-P161-M**

**HOPKINS COUNTY JAIL et al.**                                                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff, Bradley Stills Peeler, is presently incarcerated at the Roederer Correctional Complex, having previously been incarcerated at the Hopkins County Jail ("HCJ") where the events occurred which are the subject of this action. Plaintiff names the HCJ,[1] Lt. J. Hicks, RN, and Jim Lantrip, jailer, as Defendants in this action. The Court has construed the complaint as seeking relief against Defendants Lantrip and Hicks in both their individual and official capacities.[2] *See* DN 8. Plaintiff seeks relief in the form of having the jail pay for his medication. Further, Plaintiff wants the jail reprimanded, fined, and to be required to pay punitive damages for his mental anguish.

According to his complaint, in May 2004, Plaintiff was taking the prescription medications Elavil and Klonopin for his bipolar/anxiety disorder. He had been taking medication for over seven years. Defendant Hicks warned Plaintiff that his medication was

---

[1] Because HCJ is not an entity subject to suit, the proper party is the municipality, *i.e.*, Hopkins County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of [the] complaint.") (citing *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990)).

[2] If an action is brought against an official of a governmental entity in his "official capacity," the official capacity claims should be construed as being brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68 (1989); *Matthews*, 35 F.3d at 1049. Therefore, in the case at bar, Plaintiff's official capacity claims as to the employees of the HCJ are brought against Hopkins County, as is his claim against the HCJ.

running low and would last only two more weeks. Plaintiff asked Defendant Hicks to schedule an appointment for him with the HCJ doctor so that the doctor could renew his prescriptions. Plaintiff states that Defendant Hicks refused to let him see the doctor, but, instead, let his medication run out. Plaintiff states that he asked Major Schaeffer, Chief Deputy, for a grievance form in order to grieve the incident but was refused a grievance form and was placed in lock-down for asking for a grievance form while being a trustee. On October 11, 2004, Plaintiff requested that he be transported to see his regular psychiatrist at the Pennyroyal Mental Health Clinic. On November 2, 2004, the HCJ transported Plaintiff to see his psychiatrist, Dr. Hasnan Sadiq. At that appointment, Dr. Sadiq ordered Plaintiff to have an emergency session with the resident therapist, Mr. Leet. Plaintiff met with Mr. Leet and then returned to Dr. Sadiq's office. Dr. Sadiq prescribed three medications for Plaintiff's mental illness – Neurontin, Seroquel, and Remeron – and scheduled a follow-up appointment for six weeks later.

The following day, the HCJ informed Plaintiff that his "peoples" needed to come pick up his prescriptions because the jail would not pay for them. Plaintiff informed "them" that he was indigent and had no one outside of the HCJ who could pay for his medications. As of the date Plaintiff signed the complaint in this action, November 8, 2004, Plaintiff was still without his medication. Plaintiff contends that, since he is in HCJ custody, HCJ should pay for his medications.

Plaintiff's complaint alleges " abuse of process, intentional infliction of emotional distress from outrageous conduct, deprivation of civil rights, and [denial of his] due process" and that "[the individual defendants took action which deprived [him] of constitutional and statutory rights without just cause, equal protection or due process in order to Deny [him] the

intended psychiatric treatment. Their actions were retaliatory in nature, and has caused emotional and mental distress." The Court dismissed Plaintiff's claims regarding retaliation and Equal Protection and Due Process violations, leaving only his Eighth Amendment claims to be decided. *See* DN 8. Defendants filed an answer in which, among other things, Defendants denied that they were deliberately indifferent to a serious medical need of Plaintiff. Defendants asserted in their answer that Nurse Amanda Pendley, a psychiatric nurse practitioner, had disagreed with Plaintiff's demand to continue taking Klonipin, a drug which he stated previously had been given to him by Dr. Sadiq. Defendants further stated in their answer that, per Nurse Pedley's referral, Plaintiff was seen in November 2004 by Dr. Sadiq who prescribed Seroquel and Remeron, medications that were not on the jail's approved pharmacy list. Because Plaintiff said that he could not pay for those prescriptions, Nurse Pendley prescribed Zyprexa as an alternative to Seroquel and Elavil as an alternative to Remeron.

Per court order, Plaintiff filed a pre-trial memorandum stating the details of the facts upon which he based his claim. Plaintiff's pre-trial memorandum essentially reiterates the allegations of his complaint but added that after he informed HCJ that he could not afford to pay for the medication prescribed by Dr. Sadiq and that he wanted HCJ to pay for his medications, the "jail doctor," Amanda Pendley, wanted to give him medication that the jail had samples of but that he told her that that "medication had very bad side effects and could cause diabetes."

Defendants have filed a motion for summary judgment, as has Plaintiff.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

3

to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the nonmoving party will bear the burden at trial on a dispositive issue, the nonmoving party must go beyond the pleadings and by his own affidavits, "or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted, citing FED. R. CIV. P. 56(e)). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Id*. at 323-24.

4

### III. ANALYSIS

In their motion for summary judgment, Defendants argue that Plaintiff's complaint is barred by the Prison Litigation Reform Act ("PLRA"), which bars claims for mental or emotional injury suffered in custody without a prior showing of physical injury. Defendants also argue that Plaintiff's Eighth Amendment claims fail because Plaintiff was not denied medical treatment and his complaints regarding his medical treatment reflect only a difference of opinion with how he was treated medically. Defendants attach as an exhibit to their motion for summary judgment a letter dated February 2, 2005, from Amanda Pendley, Psychiatric Nurse Practitioner, to Major Shaffer at HCJ. Nurse Pendley states in that letter that she has reviewed Plaintiff's chart and that she saw Plaintiff at HCJ on two occassions. She states that, on October 19, 2004, Plaintiff demanded to be put back on Klonipin, "a medication that [Plaintiff] stated he had been given previously by Dr. Sadiq at Pennyroyal Mental Health Center." Nurse Pendley states that she informed Plaintiff that she could not prescribe that medication nor did she agree that it was a medication he should take for his anxiety because of his history of substance addiction given that Klonipin is a "controlled and highly addictive medicine." She states that when Plaintiff became "very reactive and demanded to see Dr. Sadiq," she told him that she would refer him to be seen by Dr. Sadiq but reminded him that he would be required to pay for that medication if it was not on the approved medication list of the jail pharmacy. She also told Plaintiff that "every effort would be made to find a very close alternative in that instance if he could not pay for it himself."

Nurse Pendley's letter explains that Plaintiff was evaluated at Pennyroyal Mental Health Center and prescriptions were given for Seroquel and Remeron, which are "very expensive medications" not approved by the jail pharmacy. She further explains that Plaintiff was then

5

given the opportunity to purchase those medicines himself. However, on November 23, 2004, at her next appointment with Plaintiff, Plaintiff stated that he could not pay for those medicines. Nurse Pendley then told Plaintiff that he would be given close alternatives to those medicines, and she prescribed Zyprexa as an alternative to Seroquel and Elavil as an alternative for Remeron.

Nurse Pendley further states in that letter that Plaintiff has been "very demanding and manipulative in attempting to obtain specific medications of his own choosing" and that he has a history of "personality disorders explaining his manipulative, demanding and reactive behavior." She further states that he has a "known and documented history of drug abuse by his own admission."

Plaintiff also has filed a motion for summary judgment, in which he contends that on April 20, 2004, he inquired how long it would be until his medications ran out. He states that he was told that he had two months left of Elavil, two months left of Zantac, and two and one-half months left of Clonazepan, but that he was told that once those refills ran out they would not be refilled because they were not "life sustaining." He attaches as support to his motion a HCJ Medical Request Form in which a staff member, on April 20, 2004, responded to his request for medication by stating that, because the medications requested by Plaintiff were not "life sustaining," those medications would not be refilled. Plaintiff appears to argue that those medications should be considered "life sustaining" because, without those medications, he could have committed suicide. As support for this assertion, he attaches an "Intake Medical Screening" form dated June 4, 2003, in which he checked off the box marked "yes" after the question, "Have you ever attempted or considered suicide?" He argues that this document

demonstrates that HCJ showed deliberate indifference to his serious medical needs because the jail was on notice of his prior suicide attempts.

He further asserts that when he put in a medical request to see the jail doctor he was informed by Defendant Hicks that she would speak to the doctor for him and that she told him that she had spoken to Dr. Lee but that he did not authorize any refills. Plaintiff asks, "How could Dr. Lee make a diagnosis without evaluating me . . . first?" and ponders whether Defendant Hicks even asked Dr. Lee about his medicine. He argues that the jail officials showed deliberate indifference to his serious medical needs in May 2004 when they allowed his medication to run out and refused to let him see the jail doctor and in November 2004 when they refused to follow Dr. Sadiq's instructions and refused to pay for his medication "even though other inmates in the jail were receiving the very same medications that they were refusing to give me." He states that he could provide the names of the inmates receiving that medication if the court did its own investigation. He therefore asserts that he should be granted summary judgment and awarded monetary relief.

Also attached to Plaintiff's summary-judgment motion is an "Inmate Incident Report" dated June 24, 2004, detailing that Defendant Hicks was told that Plaintiff had requested a grievance form due to his Elavil not being refilled. Defendant Hicks stated that she had had "numerous conversations" with Plaintiff and had advised him that, as a nurse, she could not refill his prescription without a doctor's order. She stated that she had spoken to Dr. Lee the day before about refilling Plaintiff's prescriptions but that Dr. Lee did not do so. Defendant Hicks stated in that incident report that, although Plaintiff had been warned to refrain from badgering the staff about refilling his medications, Plaintiff had continued to do so.

7

In response to Plaintiff's motion for summary judgment, Defendants argue that Plaintiff's claims regarding actions by HCJ officials in April and June 2004 are new and not part of his original complaint and therefore not before the court. Defendants further argue that all of Plaintiff's assertions in his motion for summary judgment relate to the adequacy of his medical treatment and only describe a dispute over the appropriateness of his medical treatment and not an Eighth Amendment violation.

In his reply to Defendants' response to his motion for summary judgment, Plaintiff argues that, when he filed his initial complaint, he did not have access to discovery material and therefore was unable to give exact dates. He asserts that he has shown that his allegations were true even if he did not have the correct dates. He also states that, if the Court chooses, he could refile his claim with the exact dates.

The Court does not agree that what Defendants refer to as Plaintiff's new claims are actually new but rather finds that they are part and parcel of the claims he raised in his complaint. However, the Court will grant summary judgment in favor of Defendants and deny Plaintiff's motion for summary judgment because there is no genuine issue as to any material fact and Defendants are entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c).

Summary judgment is appropriate for Defendants because Plaintiff has not shown an Eighth Amendment violation.[3] There is no dispute over any material facts. Both Defendants and

---

[3] The Court notes that Defendants are correct that, with the passage of the PLRA, Congress has required that there must be a showing of physical injury in order to bring an action for money damages for emotional injury. 42 U.S.C. § 1997e(e); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997); *Pryor v. Cox*, No. 97-3912, 1999 WL 1253040, at *1 (6th Cir. Dec. 13, 1999). Plaintiff does not allege any physical injury as a result of Defendants' actions or inactions. Of course, § 1997e(e) only prohibits monetary relief, not

Plaintiff agree that HCJ did not provide to Plaintiff the precise medications that he previously had been taking or that he wished to take. Additionally, the parties agree that Plaintiff was offered the opportunity to pay for the medicines prescribed by Dr. Sadiq but that Plaintiff refused that option because he could not afford to do so. Plaintiff does not dispute the statements contained in Nurse Pendley's letter, attached to Defendants' motion for summary judgment, that she told Plaintiff that he would be given close alternatives to those medicines and that she prescribed for Plaintiff Zyprexa as an alternative to Seroquel and Elavil as an alternative for Remeron.[4]

To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct,

---

injunctive or declaratory relief. *Mitchell v. Horn*, 318 F.3d 523, 533-34 (3d Cir. 2003); *Pryor*, 1997 WL 1253040 at *1. However, to the extent that Plaintiff's request for relief can be construed as requesting declaratory and injunctive relief, his requests are moot because he is no longer incarcerated at the HCJ. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

[4] The Court notes that, although none of the documents attached to the parties' motions for summary judgment are proper summary judgment evidence, *see Moore v. Holbrook*, 2 F.3d 697, 698 (6th Cir. 1993), neither party objects to that evidence in either form or substance. Moreover, even were the Court to ignore the documentation attached to the motions, it is clear from the pleadings alone that the parties do not dispute the essential facts of the case: that HCJ transported Plaintiff to see his psychiatrist, Dr. Sadiq; that Plaintiff was given the opportunity to pay for the medication prescribed by Dr. Sadiq; and that, because Plaintiff could not afford those medications, Nurse Pendley prescribed alternatives to those medications.

however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's belief that he should have been given the precise medications that he wanted at HCJ's expense merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Even if the denial of the medications he wanted at the jail's expense could be considered malpractice, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Moreover, to the extent that Plaintiff argues that Defendants delayed his medical treatment, that claim does not rise to the level of a constitutional violation. A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo County*, 390 F.3d 90, 898 (6th Cir. 2004). However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided

10

by the *effect* of delay in treatment.'" *Id.* at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994). Examples of the latter branch include claims of "delayed administration of medication, . . . a prisoner's refusal to take the prescribed medication, . . . or occasional missed doses of medication," *id.* at 897; "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether the prisoner was treated adequately . . . or whether any delay in providing medical care was harmless." *Id.* In such circumstances, " '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.' "[5] *Id.* (quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Hill*, 40 F.3d at 1188)). Plaintiff has not placed in the record verifying medical evidence establishing a detrimental effect of a delay in medical treatment. In fact, he does not even allege any detrimental effect. Therefore, Plaintiff's allegations do not rise tot he level of a constitutional violation for a delay in treatment. *See id.* at 897-98.

## V. ORDER

For the reasons set forth more fully above, there are no genuine issues of material fact as to Plaintiff's Eighth Amendment claims. Defendants are entitled to judgment in their favor as a matter of law. Accordingly, **IT IS ORDERED** that Defendants' motion for summary judgment

---

[5] "[W]here a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated." *Id.* at 899-900 (citation omitted). "Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.* at 900.

11

is **GRANTED** and that Plaintiff's motion for summary judgment is **DENIED**.  The Court,

therefore, declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.  The

Court will enter a separate judgment consistent with this Memorandum Opinion and Order.

Date:

cc:    Plaintiff, *pro se*
       Defendants
       Hopkins County Attorney

4414.009